DECISION
Before this Court is an appeal of a decision by the Narragansett Planning Board (Planning Board), granting approval of a comprehensive permit application submitted by Donna Kennedy and Michael McLoughlin. Kennedy and McLoughlin seek permission, pursuant to G.L. 1956 § 45-53-1et. seq., "Rhode Island Low and Moderate Income Housing Act" (the act), to subdivide Kennedy's property to recreate three previously-merged lots and to develop affordable housing on one of those lots. Barry A. Jagolinzer and Ellen Horvitz Jagolinzer (Jagolinzers, or Appellants), who own nearby property, filed this timely appeal on April 2, 2007. Jurisdiction is pursuant to § 45-53-4(a)(4)(x).
 I Facts and Travel
Donna Kennedy is the owner of property located at 83 Robinson Street in Narragansett, Rhode Island and also bordering Fifth Avenue in Narragansett. Michael McLoughlin is the president of the Narragansett Affordable Housing Corporation, a non-profit *Page 2 
corporation which seeks to expand the availability of affordable housing in Narragansett.[1] Barry A. Jagolinzer and Ellen Horvitz Jagolinzer own property at 51 Fifth Avenue in Narragansett and located across the street from the property owned by Kennedy.
In 2006, Kennedy and McLoughlin applied to the Planning Board for approval of their preliminary plan to subdivide Kennedy's property into three lots and to create affordable housing on one of the lots. The application was filed pursuant to the Rhode Island Low and Moderate Income Housing Act, G.L. 1956 Chapter 53 of title 45, which creates "a streamlined and expedited application procedure" for proposals to develop low and moderate income housing. Town of Coventry Zoning Bd. ofReview v. Omni Development Corp., 814 A.2d 889, 894 (R.I. 2003). Pursuant to the act, a single application for a comprehensive permit may be submitted to a "local review board" in lieu of "separate applications to the applicable local boards." Section 45-53-4(a); see also OmniDevelopment Corp., 814 A.2d at 894. This procedure is available only for proposals in which at least 25 percent of the housing is low or moderate income housing, as defined by the act. Section 45-53-4(a).[2] A "local review board" may be either the municipality's planning board or the zoning board of review. See Section 45-53-3(9). In *Page 3 
Narragansett, the Planning Board acts as the town's local review board. A local review board has "the same power to issue permits or approvals that any local board or official who would otherwise act with respect to the application" would have. See Section 43-54-4(a)(4)(vi). Thus, the act grants local review boards the authority to grant any necessary variances from zoning ordinance provisions and waivers or modifications from subdivision regulations.
The property at issue, located in Narragansett's R10 zoning district, formerly consisted of three separate lots on the Narragansett Tax Assessor's Map D: Lot 98, a 10,014 square foot vacant lot; Lot 99, a 7160 square foot lot with a garage; and Lot 100, a 5460 square foot lot with a single-family house and garage. The Narragansett Zoning Ordinance (zoning ordinance) requires lots in the zoning district to have a minimum area of 10,000 square feet and widths of at least 100 feet. Narragansett Zoning Ordinance § 6.4. The zoning ordinance also requires that adjacent lots under common ownership which do not meet the zoning ordinance's dimensional requirements "shall be combined . . . to establish a lot or parcel having at least the minimum dimensions and area. . . ." Narragansett Zoning Ordinance § 8.1(d); see also G.L. 1956 § 45-24-38 (permitting municipalities to enact merger provisions in zoning ordinances). Because no single lot satisfied both the minimum width and area requirements of the zoning ordinance, the three lots merged when they came under the common ownership of Kennedy.
Kennedy and McLoughlin's plan would subdivide her property, unmerging Lots 98, 99, and 100 and recreating them in roughly the same form in which they once existed. Lot 98 would be sold to the Narragansett Affordable Housing Corporation, which would build a duplex on the lot consisting of two low-or-moderate-income dwelling units. A *Page 4 
single-family dwelling, not intended as low or moderate income housing, would be built on Lot 99. Lot 100 would not be developed further.
The Planning Board held public hearings on the matter on December 5, 2006; January 16, 2007; and February 13, 2007. Neighboring property owners, including Barry A. Jagolinzer, raised concerns about how the proposal would impact the character of the neighborhood, known as the "Pier" district of Narragansett. (Transcript, December 5, 2006 [Tr. I] at 33.) For instance, neighboring property owners opined that the proposed development would unduly increase the density of the neighborhood and diminish its historic value. (Tr. I at 37, 41; Transcript dated January 16, 2007 [Tr. II] at 43.) The Planning Board also received testimony alleging that Kennedy was using the Low and Moderate Income Housing Act both to make a profit and to circumvent the merger and dimensional provisions of the zoning ordinance. (Tr. I at 43-45, 51.) Some neighboring property owners argued that other strategies should be pursued for increasing affordable housing in Narragansett. (Tr. I at 41-45; Tr. II at 10, 20-21.) Also, noteworthy, McLoughlin testified at the December 5, 2006 hearing that only 2.65 percent of housing units in Narragansett qualified as low or moderate incoming housing under the act. (Tr. I at 7.)
On March 7, 2007, the Planning Board held a fourth meeting at which it privately discussed Kennedy and McLoughlin's application. While a stenographer was present at the first three hearings, [3] no stenographer was present at the March 7, 2007 meeting.[4] The decision of the Planning Board indicates that at the conclusion of the fourth meeting, it
[1] McLoughlin testified that in addition to being President of the Narragansett Affordable Housing Corporation, he is Executive Director of the Narragansett Housing Authority. See Transcript dated December 5, 2006 at 6.
[2] The act defines "low or moderate incoming housing" as:
 "any housing whether built or operated by any public agency or any nonprofit organization or by any limited equity housing cooperative or any private developer, that is subsidized by a federal, state, or municipal government subsidy under any program to assist the construction or rehabilitation of housing affordable to low or moderate income households, as defined in the applicable federal or state statute, or local ordinance and that will remain affordable through a land lease and/or deed restriction for ninety-nine (99) years or such other period that is either agreed to by the applicant and town or prescribed by the federal, state, or municipal government subsidy program but that is not less than thirty (30) years from initial occupancy." Section 45-53-3(5).
[3] Transcripts of those meeting were provided to this Court. The Jagolinzers apparently paid for a stenographer to be present at these meetings. (Tr. dated February 13, 2007 at 20.)
[4] A hearing transcript has not been produced for that meeting, though, according to the Jagolinzers, a tape of the meeting exists. *Page 1